UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        Case No. 1:22-cr-20030

v.                                          Honorable Thomas L. Ludington
                                               United States District Judge
ANDREW PAUL LECRONIER,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

After stabbing her boyfriend eight times, Christina Scioli gave verbal and written consent to search their apartment for evidence of the stabbing. Then she told the police that her boyfriend was a drug dealer and that he had stashed $13,000 of cocaine in their laundry room and in a safe in their bedroom.

Defendant, the boyfriend, has filed a motion to suppress the cocaine. He argues Scioli did not give valid consent to search for the cocaine by telling police where to find it. He adds that the warrant obtained after police corroborated Scioli's statements was not based on probable cause.

The question before this Court is whether a person consents to a search for cocaine in their apartment by telling the police where to find the cocaine immediately after giving verbal and written consent to search the apartment for evidence of another crime.

I.

The following facts represent this Court's findings based on the witnesses' testimony, demeanor, qualifications, and credibility at a bench hearing. *See United States v. Mandycz*, 359 F. Supp. 2d 601, 603 (E.D. Mich. 2005) (citation omitted).

On December 27, 2021, Defendant Andrew Paul Lecronier was "stabbed by his live-in

girlfriend Christina Marie Scioli" in their apartment. ECF No. 21 at PageID.57. Their overnight "drinking" guest, Malu Alvarado-Aguilar, drove Defendant to "Mid-Michigan Hospital[,] where he was seeking treatment for his stab wounds" when "officers located" him. *See id.* at PageID.58; ECF No. 21-2 at PageID.76. Officers Crawford and Moe requested Defendant's consent to search the apartment, but Defendant denied consent. ECF Nos. 21 at PageID.58; 21-2 at PageID.76.

While Defendant was at the hospital, Mount Pleasant Police Officer Joshua Loudenslager met Scioli at the apartment, where she admitted to stabbing Defendant and revealed a cut on her hand. ECF No. 21-2 at PageID.75. Due to the hand injury, Loudenslager "transported Scioli to McLaren Hospital for treatment," where he asked her "for permission to enter the residence and collect evidence from the stabbing." ECF No. 21 at PageID.58.

Immediately after verbally consenting to the search of her apartment and "reading and signing a consent to search form" that allowed the police to search for whatever they "desired," *id.*, Scioli voluntarily "advised" Loudenslager that Defendant "sells cocaine," that he "cuts it up on the laundry room table," and that "yesterday" in Saginaw his cousin gave him approximately $13,000 of cocaine, which he stashed in their laundry room and in a safe in their bedroom. ECF No. 21-2 at PageID.76. She then insisted that Loudenslager collect and remove the cocaine from the laundry room, adding something like, "Go in that one place, and you'll see everything you need."

Based on this information, Mount Pleasant Detective Jason Powell and other officers searched Defendant and Scioli's apartment, where they found "blood on the floor and splatter[ed] on the walls" of the "living room, hallway (outside of the laundry room), kitchen, guest bathroom, master bedroom, and garage." *Id.*; ECF No. 23 at PageID.82. They also found a bloody knife on the kitchen counter, as well as two blood-soaked shirts and a "brown trench coat" with "knife

holes" in the "common bathroom off the living room." ECF No. 21-2 at PageID.76.

Powell then searched the laundry room. ECF No. 23 at PageID.82. Peering through the half-open doorway, he saw a straight line of white powder next to three plastic cards, a rolled-up dollar bill, a box of "baggies," a pill bottle, and some other drug paraphernalia. *See* ECF Nos. 21-3 at PageID.79; 23 at PageID.82–83. Believing these items to be evidence of drug dealing based on his training and experience and Scioli's statements, Powell attempted to enter the laundry room. *Id.* at PageID.82–83. But his efforts were hindered by something on the other side of the door.

Powell shouldered through the door and field tested "the loose powder." *See id.* The test was "positive for cocaine." *Id.* As a precautionary measure, Powell immediately stopped the search and "obtained a search warrant based on what the police were told by [Scioli], corroborating observations made by the police, and the field test." *Id.* While executing the search warrant, officers "found additional cocaine in the safe and laundry room." *Id.*

Three weeks later, Defendant Andrew Paul Lecronier was indicted on one count of possession with the intent to distribute cocaine, 21 U.S.C. § 841(a)(1). ECF No. 14 at PageID.30. Ten weeks later, he filed a motion to suppress[1] "the results of the field test and all evidence obtained pursuant to the unlawfully obtained search warrant," ECF No. 21, which the Government opposes, ECF No. 23.

On August 24, 2022, this Court held a hearing on Defendant's suppression motion. Neither Defendant nor the Government called Scioli to testify, leaving Loudenslager as the only witness to Scioli's consent. His testimony was credible. Although Defendant raises a litany of arguments, his motion begins and ends with his live-in girlfriend's consent.

---

[1] Motions to suppress are pretrial motions to exclude evidence from criminal trials. *See* FED. R. CRIM. P. 12(b)(3)(C).

II.

It is no secret that the Fourth Amendment protects people from unreasonable governmental searches and seizures by requiring a warrant based on probable cause. Arnold H. Loewy, *The Fourth Amendment as a Device for Protecting the Innocent*, 81 MICH. L. REV. 1229, 1229, 1248 (1983) (quoting U.S. CONST. amend IV).

Yet the Fourth Amendment permits a warrantless search if valid consent is provided. *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010).

Courts use "objective reasonableness" to measure the scope of consent by asking "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *United States v. Lucas*, 640 F.3d 168, 175 (6th Cir. 2011) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). The scope of consent usually is defined by "the object for which a person permits the police to search." *United States v. Sanders*, No. 21-3737, 2022 WL 2176294, at *7 (6th Cir. June 16, 2022) (citing *Jimeno*, 500 U.S. at 251). A suspect may nevertheless "delimit as he chooses the scope of the search to which he consents." *Lucas*, 640 F.3d at 176 (quoting *Jimeno*, 500 U.S. at 252). "But if his consent would reasonably be understood to extend to a particular container, [then] the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Jimeno*, 500 U.S. at 252.

A.

Defendant believes the evidence should be suppressed because Scioli's consent was limited to "evidence from the stabbing." ECF No. 21 at PageID.65–66.

Scioli had actual authority to consent to a search of the apartment. Defendant acknowledges not only that Scioli was his live-in girlfriend, *id.* at PageID.57, but also that Scioli informed the officers of the same, *id.* at PageID.63, and that she "had a reasonable expectation of privacy within

the residence," *id.* at PageID.65. A live-in girlfriend may voluntarily consent to a search of her shared residence. *United States v. Ables*, 280 F. App'x 513, 518 (6th Cir. 2008) (unpublished) (collecting cases); *United States v. Grayer*, 232 F. App'x 446, 449 (6th Cir. 2007) (unpublished) (collecting cases); *see also United States v. Davis*, 283 F. App'x 370, 373 (6th Cir. 2008) (unpublished) (holding that a co-occupant has "common authority to consent to a search"). In addition, Loudenslager testified that, though Scioli had an out-of-state driver's license and lived with Defendant for four months, she shared a bedroom with him, kept clothes at their apartment, and was listed in the police database as living there due to prior incidents—all which led Loudenslager to "reasonably believe" that Scioli had "authority over the [apartment] in common with [Defendant]." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (citations omitted). As indicated, it was reasonable for Loudenslager to conclude that Scioli had the authority to consent to a search of the apartment. *United States v. Hudson*, 405 F.3d 425, 442–43 (6th Cir. 2005).

Although Defendant refused consent, it is immaterial. When Scioli consented to Loudenslager, he was not aware that Defendant had just refused consent to different officers at a different hospital. ECF No. 21 at PageID.63 ("Defendant denied consent to enter the home. Meanwhile, . . . . [o]fficers asked Scioli for consent to enter the residence and collect evidence related to the stabbing."); *see United States v. Ayoub*, 498 F.3d 532, 541 (6th Cir. 2007) ("[B]ecause [Defendant] was not present and objecting, [Scioli] had authority to consent to the search."). Defendant was also absent during Powell's search. "[I]f the objecting occupant is not present to refuse the search, [then] the Fourth Amendment is not violated by a search conducted pursuant to the consent of a co-occupant." *Davis*, 283 F. App'x at 373 (citing *Randolph*, 547 U.S. at 121). Moreover, though the outcome might be different if there was "evidence that the police ha[d] removed [Defendant]," *Randolph*, 547 U.S. at 121, Defendant was not absent from Scioli's

consent and Powell's search due to police conduct, ECF No. 21 at PageID.63 ("Defendant had left the Broadway residence prior to the officers' arrival in order to seek medical treatment.").

The next question, then, is whether Scioli limited the scope of her consent to evidence of the stabbing. But the scope of her initial consent is like a detour sign in front of an open road—Scioli's concurrent disclosure of the cocaine need not extend consent because it, too, was consent. *See United States v. Robinson*, 217 F. App'x 503, 507 (6th Cir. 2007) (unpublished) ("Ms. [Scioli's] consent was freely and voluntarily given as she had initiated the contact with the police and she gave Officer [Loudenslager] the [consent] to [search] her house [for cocaine] without him having made any such request."). That is, after she consented to a search for stabbing evidence in her apartment, she separately consented to a search for cocaine in her laundry room by voluntarily disclosing that information.

Without a break in time, topic, or tone, Scioli verbally consented to a search of her apartment, signed a consent form, and then—without any custodial interrogation—explained who bought and sold the cocaine, what it was worth, when it was purchased, where it was stored, why it was there, and how it was packaged for sale. ECF No. 21-2 at PageID.76. Before Scioli volunteered that information, Loudenslager did not even hint at any potential cocaine.

What would a typical reasonable person have understood by hearing Scioli telling Loudenslager to search her apartment for evidence of a crime then saying that $13,000 of cocaine is in her laundry room and her boyfriend's safe in her bedroom?

Based on the totality of the circumstances, it was "objectively reasonable for [Loudenslager] to conclude" that Scioli gave consent to search for the cocaine because she disclosed it as an "expressed object" of her consent to search after which she "placed no explicit limitation." *See United States v. Jackson*, 468 F. App'x 447, 457 (6th Cir. 2012) (unpublished)

(citing *Jimeno*, 500 U.S. at 251–52). Loudenslager's testimony to this effect was credible and unrebutted. Accordingly, the Government has met its burden of proving by "clear and positive" testimony that Scioli's consented to a search of her laundry for cocaine. *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010) (quoting *United States v. Burns*, 298 F.3d 523, 541 (6th Cir. 2002)).

As in *United States v. Sanders*, No. 21-3737, 2022 WL 2176294 (6th Cir. June 16, 2022), "[t]he only evidence [Defendant] offers to support [an opposing] version of events is [Loudenslager's and Powell's] reports of the incident, which describe [Scioli's] consent." *Sanders*, 2022 WL 2176294, at *7. The reports, only one of which Defendant has offered as an exhibit, provide that Scioli gave "permission to go into her house and retrieve any evidence from the stabbing," ECF No. 21-2 at PageID.76, which Defendant believes limited Scioli's consent to exclude her imminent disclosure of the cocaine, ECF No. 21 at PageID.65–66.

But, also like *Sanders*, those reports did not limit the scope of Scioli's consent because they merely "reflected the officers' primary objective." *United States v. Sanders*, No. 21-3737, 2022 WL 2176294, at *7 (6th Cir. June 16, 2022) (citation omitted). Indeed, "in consenting to the search, Ms. [Scioli] specifically identified for Officer [Loudenslager] the location of [the cocaine]. This disclosure belies the assertion that Ms. [Scioli] intended to limit her consent to [stabbing evidence] only," because "she would have objected" yet "raised no such objection." *United States v. Sanders*, No. 1:18-CR-031, 2019 WL 3459352, at *8 (S.D. Ohio July 31, 2019), *aff'd*, No. 21-3737, 2022 WL 2176294 (6th Cir. June 16, 2022).

For these reasons, the Mount Pleasant police did not exceed the scope of Scioli's consent when they searched her laundry room for cocaine, as she told them to do. Even if her initial consent somehow limited her consent to evidence of the stabbing, Powell's search and test of the cocaine

were justified under the plain-view doctrine. As explained above, while lawfully in the blood-covered hallway, his training and experience made it "immediately apparent" that what he saw through the open door was cocaine and drug-dealing equipment. *See United States v. Blair*, 214 F.3d 690, 698 (6th Cir. 2000) (citing *United States v. Blakeney*, 942 F.2d 1001, 1028 (6th Cir. 1991)); discussion *supra* Part I.

## B.

The final issue is whether the search warrant was valid: based on probable cause. Defendant seeks to suppress "all evidence seized as a result of the search warrant" as "fruit of the poisonous tree." ECF No. 21 at PageID.60. The "tree" that he plants is "the initial unlawful search and seizure" due to insufficient consent, without which he believes the warrant would have lacked probable cause. *Id.* But, as explained, there was no unlawful seizure. *See* discussion *supra* Section II.A. Moreover, the warrant was supported by probable cause—with and without Scioli revealing the cocaine.

Probable cause for a warrant requires "an affidavit that 'indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Helton*, 35 F.4th 511, 518 (6th Cir. 2022) (quoting *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018)).

Powell's affidavit included, among other things, ten key pieces of information: (1) that Defendant and Scioli lived together, (2) Scioli's verbal and written consent to enter their apartment to "retrieve any evidence from the stabbing," (3) that Scioli then "advised [Loudenslager] that [Defendant] sells cocaine" (4) that Scioli said Defendant "just went on a drug run yesterday" for "about $13,000 dollars' worth of cocaine," (5) that Scioli revealed that Defendant "keeps [the cocaine] either in their safe in their bedroom or in the drawers in the laundry room." (6) Scioli's

addition that Defendant "cuts [the cocaine] up on the laundry table," (7) Powell's plain-view observation of "white residue on the laundry room table" next to "a box of zip lock baggies and several credit cards," (8) Powell's conclusion that those items were evidence of drug dealing based on his training and experience, and (9) the field test that positively identified the white powder as cocaine, and (10) that Powell corroborated the information that Scioli told Loudenslager. ECF No. 21-2 at PageID.75–76.

This Court must "consider whether the totality of these [ten] pieces of information supports a finding of probable cause." *United States v. Helton*, 35 F.4th 511, 518 (6th Cir. 2022).

Much more than a fair probability, the totality of the circumstances demonstrated near certainty that a search of Defendant and Scioli's apartment would reveal evidence of drug dealing. Indeed, like the sufficient affidavit in *United States v. Miller*, 314 F.3d 265 (6th Cir. 2002), Powell's affidavit provided Scioli's full legal name, demonstrated her personal knowledge of Defendant's cocaine-distribution operation, discussed how she knew that information, and detailed her presence in the home within 24 hours of the issuance of the warrant. *Miller*, 314 F.3d at 269–70; *see also United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986) ("When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' present a substantial basis for conducting a search for that evidence."); *see* ECF No. 21-2 at PageID.75–76.

Defendant nevertheless believes "there is no indication that Scioli's statements [we]re reliable," because "she had just admitted to stabbing [him]." ECF No. 21 at PageID.70.

But Scioli's admission made Powell's affidavit even more reliable than the one in *Miller*. *See* FED. R. EVID. 804(b)(3) (effectuating Congress's intent for federal courts to find "clear[] . . . trustworthiness" in a corroborated statement "so contrary to the declarant's proprietary or

pecuniary interest . . . that [it] tends to expose the declarant to criminal liability"). Moreover, even if Scioli was a jaded ex-lover, Powell did not seek the warrant until after he corroborated her statements about the cocaine in the laundry room. At that moment, Powell had no reason to distrust Scioli because all the lawfully verifiable information that she provided was accurate. *United States v. Helton*, 35 F.4th 511, 518 (6th Cir. 2022) ("[A]n affidavit that provides 'little information concerning an informant's reliability may support a finding of probable cause' when the affidavit contains corroborating information." (quoting *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004))).

For these reasons, there was no poisonous tree, the warrant was valid, and no evidence will be suppressed. Consequently, Defendant's Motion to Suppress will be denied.

### III.

Accordingly, it is **ORDERED** that Defendant's Motion to Suppress, ECF No. 21, is **DENIED**.

Further, it is **ORDERED** that a telephonic status conference is **SCHEDULED** for **September 6, 2022, at 3:30 pm**. Counsel will receive an email with call-in number.

Dated: September 2, 2022                         s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge